**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE: | * CASE NO. 11-13028 |
| | * |
| Virgin Offshore USA, Inc., | * CHAPTER 11 |
| | * |
| DEBTOR | * JUDGE ELIZABETH MAGNER |

**REASONS FOR ORDER DENYING MOTION TO STAY**
**PENDING APPEAL PURSUANT TO RULE 8005**

### PROCEDURAL HISTORY

On October 23, 2012, Trustee filed a Motion to Assume Master License Agreement for Geophysical Data with TGSN. (P-253). A hearing on the Motion to Assume was held on November 16, 2012 and on November 20, 2012, the Court granted the Motion. (P-292). On November 27, 2012, TGSN filed a Notice of Appeal. (P-297). This Motion followed on the same day. (P-298).

### FACTS AND PRIOR RULING

Virgin Offshore U.S.A., Inc. ("Offshore") is in the business of acquiring, exploring and developing oil and gas properties with its parent, Virgin Oil Co., Inc. ("Oil"). On January 16, 2003, Offshore acquired a non-exclusive license to use[1] geophysical data ("Data") from TGSN ("License Agreement"). Offshore made a one time payment of $183,488.00 to license the Data for a period of twenty-five (25) years.[2]

---

[1] The term "Use" is defined in Section 6.6 of the TGSN License: "'Use' means to have or be permitted access to Seismic Materials in a manner that allows a person to alter, or generate displays, interpretations or processing of, the Seismic Material."

[2] *See,* Section 9.1.7 of the License Agreement.

1

On September 16, 2011, an involuntary petition for relief under chapter 11 of the United States Bankruptcy Code was filed by Precision Drilling, L.P., Dynamic Energy Services, L.L.C., and Tanner Services, L.L.C. against Offshore. Offshore consented to entry of the Order for Relief and filed a Motion to Appoint Chapter 11 Trustee on October 6, 2011. (P-21). The Order for Relief was entered on October 12, 2011 (P-24) and on October 14, 2011, Gerald H. Schiff was appointed as the chapter 11 Trustee ("Trustee") of the Offshore estate. (P-219).

Thereafter, Trustee moved to assume the License Agreement and gave notice of his intention to utilize the Data for development of Ship Shoal 153.[3] TGSN opposed assumption on the grounds: 1) the License Agreement terminated pursuant to an *ipso facto* clause contained in the contract triggering termination on the filing of bankruptcy;[4] and 2) assignment of the contract was prohibited under federal law. At the hearing on the Motion to Assume, counsel for TGSN conceded that *ipso facto* clauses triggering termination of agreements upon the filing of bankruptcy are unenforceable under the terms of bankruptcy law.[5]

The relief requested by Offshore did not include assignment of the License Agreement to a third party. The Motion to Assume merely requested permission for *Offshore* to assume or confirm its obligations under the License Agreement. Under section 365(a), a trustee or debtor in possession

---

[3] Prior to filing the Motion to Assume, Trustee had advised TGSN of his intention to share the Data with the Oil Plan Trust, an entity created pursuant to a corporate reorganization of Oil. As Offshore's parent corporation, Trustee maintained that Oil was a Related Entity under the terms of the License Agreement and its trust was also a Related Entity under a corporate reorganization or restructuring of a Related Entity. TGSN had responded by attempting to terminate the License Agreement pursuant to the *ipso facto* clause.

[4] *See*, Section 9.1.5 of the License Agreement.

[5] TGSN was reluctant to admit that its attempts to terminate, post-petition, were both ineffective and prohibited by the Bankruptcy Code given that these actions could have led to sanctions for violation of the automatic stay. Ultimately, TGSN had to decide whether or not it would pursue this avenue for relief at the hearing on the Motion to Assume and elected to concede the point. No sanctions were imposed for its actions. 11 U.S.C.§ 365(e)(1).

may assume or reject executory contracts subject to some limitations and with court approval. Trustees, as representatives of the bankruptcy estate, succeed to the same rights and interests of the debtor upon their appointment. Thus, Trustee in this case sought to perform and succeed to the same rights as Offshore in the License Agreement.

The License Agreement provides:

Section 5. Right of Use by Related Entities
5.1 Provided that the relationship exists as of the date of this Agreement, "Related Entity" of a Licensee means (a) any company or other entity which owns or controls, directly or indirectly, more than fifty percent (50%) of the stock, equity interest or economic interest (collectively, the "Equity") of the Licensee, (b) any company or other entity more than fifty percent (50%) of the Equity of which is directly or indirectly owned or controlled by the Licensee, or (c) any company or other entity more than fifty percent (50%) of the Equity of which is directly or indirectly owned or controlled by a company or other entity that owns or controls directly or indirectly, more than fifty percent (50%) of the Equity of the Licensee.
5.2 Any company or other entity formed after the date of the Agreement as part of a corporate reorganization or restructuring of the Licensee or a Related Entity of the [L]icensee and any new company or other entity otherwise formed within the corporate family of the Licensee shall be deemed a Related Entity; provided, that the new company or other entity is owned or controlled by the Licensee or one of its Related Entities. Except as used in Section 5.1, as used in this Agreement "owns or controls," "owned or controlled," or "ownership or control" means direct or indirect owner-ship (sic) or control of one hundred percent (100%) of the Equity of such company or entity.
5.3 Notwithstanding the provisions of Section 4, a Related Entity shall have the same right to Use the Seismic Material [Data] as Licensee without payment to TGSN of an additional license fee;.....

Under the terms of Section 5, TGSN did not claim that Trustee was not entitled to use of the Data as a Related Entity. Trustee is clearly an entity formed as a part of a corporate reorganization or restructuring of Licensee (Offshore). Instead, TGSN asserted that under the provisions of 11 U.S.C. §365(c), Trustee was prohibited from assuming and assigning the License Agreement under federal copyright law.

Section 365(c) of the Bankruptcy Code provides:

3

> The trustee may not assume or assign any executory contract or unexpired lease of the debtor, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties, if – (1)(A) applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to an entity other than the debtor or debtor in possession,[6] whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties; and (B) such party does not consent to such assumption or assignment.

The Motion to Assume did not request the right to assign the License Agreement, nor did it contemplate transferring any rights under the agreement. As previously noted, the License Agreement specifically provides for the continued use by Trustee or any Related Entity during the term of the License Agreement. Thus, it does not contain a prohibition against assumption by Trustee.

Nevertheless, TGSN asserted that because the License Agreement cannot be assigned under applicable law, either assumption or assignment are prohibited under 11 U.S.C. §365(c). Specifically, TGSN argues that the Data is subject to copyright protection under federal law, the License Agreement is a non-exclusive license over the Data, and that license cannot be assigned under federal law.

Because the assumption by Trustee did not contemplate an assignment of the License Agreement but merely the use of the Data by the estate, TGSN's argument hung on its particular reading of section 365(c). TGSN read the provisions of 365 to require that if *either* an assumption or assignment are prohibited by applicable law, the court may not authorize an assumption *or* assignment regardless of the actual facts of the case. TGSN's interpretation uncoupled the relief requested with potential limitations on the relief contained in applicable law. TGSN argued that if the applicable law prohibited assignment, assumption was also prohibited under section 365.

---

[6] Under the bankruptcy code, "debtor in possession" means the debtor or the trustee serving in the case. 11 U.S.C. §§ 322, 1101.

This Court did not accept the statutory interpretation offered by TGSN. Instead, it followed the Fifth Circuit's interpretation of section 365 in *In the Matter of Mirant Corporation,* 440 F.3d 238 (5th Cir. 2006). In *Mirant*, the nondebtor party argued that if it could refuse to accept performance of the contract from *any* assignee, it was irrelevant if the debtor did not actually assign, intend to assign, or attempt to assign the contract. Thus, it was argued, that a prohibition against assignment to a hypothetical assignee barred the debtor from exercising its rights under the contract during the administration of the case. If prohibited from assignment, the nondebtor party argued that the contract could be terminated under the Anti Assignment Clause of the contract and applicable federal law.

The Fifth Circuit held:

> The plain text of §365(e)(2)(A) requires an actual test for determining whether a law is "applicable" under the exception, permitting enforcement of an ipso facto clause. According to the statute's plan language, an executory contract's ipso facto clause may be enforced if "applicable law excuse a [non-debtor] party ...from accepting performance from or rendering performance ...to an assignee of such contract" and that non-debtor party does not consent to "such assumption or assignment." ...BPA creates smoke and erects mirrors when it argues that a contract not assignable as a matter of law, even if no such assignment existed in fact and no excuse existed in fact for the nondebtor party to refuse acceptance or performance in a particular situation, satisfies the language chosen by Congress in drafting the ...exception. The law that releases a nondebtor from the general rule foreclosing the enforcement of an ipso facto clause must apply to something and must excuse the nondebtor from some specific performance or acceptance...thus, if the debtor demonstrates that no application exists or that no excuse obtains on a given record, then the congressional language announces such a circumstance is material, making the ...exception unavailable. The applicability of the law....is determined not in the abstract but on the record at hand. *See, Cajun Electric*, 230 B.R. at 705; *Lil' Things*, 220 B.R. at 587; *Texaco*, 136 B.R. at 669; *Cardinal Indus.*, 116 B.R. at 974-75. *Mirant* at 249-250.

In this case, TGSN's contract contemplates the use of Data by Related Entities including Trustee. Thus, it does not prohibit the assumption of the License Agreement by Trustee and no

5

assignment is contemplated. Further, no law, state or federal, excuses TGSN from accepting performance by a debtor or debtor in possession. Under these facts, the limitations imposed on assignment of the agreement are inapplicable and this Court authorized Trustee to assume the License Agreement.[7]

TGSN has appealed that ruling.

In light of its appeal, TGSN has asked this Court to suspend proceedings under Federal Rule of Bankruptcy Procedure 8005 until the appeal is concluded to "protect the rights of all the parties in interest." In order to obtain a stay pending appeal, TGSN, as the moving party, must (1) make a showing that it is likely to succeed on the merits; (2) demonstrate that it would suffer irreparable injury if the stay were not granted; (3) show that granting the stay would not substantially harm the other parties; and (4) show that granting the stay would serve the public interest. *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). For the reasons set forth below, none of these factors weigh in favor of granting a stay of this Court's ruling pending appeal.

1. **Likelihood of Success on the Merits**

The movant "need not always show a probability of success on the merits; instead the movant need only present a substantial case on the merits when a serious legal question is involved and show that the balance of the equities weighs heavily in favor of granting the stay." *Ruiz v. Estelle,* 650 F.2d 555, 565 (5th Cir. 1981).

TGSN argues that a substantial legal question exists as to whether 11 U.S.C. § 365(c) prohibits the assumption of a license agreement by Trustee. TGSN argues that other courts have

---

[7] It is worth noting that by assuming the License Agreement, Trustee is bound by the agreement's terms including those that may limit assignment. As a result, should Trustee desire to assign the estate's rights under the contract, Trustee will have to comply with the provisions of the agreement and TGSN will receive the benefit of its bargain.

6

adopted a "hypothetical test" when deciding whether a trustee or debtor may assume or assign an executory contract under Section 365(c), for example, *In re Catapult Entertainment, Inc.*, 165 F.3d 747 (9th Cir. 1999) or *In re West Electronics, Inc.*, 852 F.2d 79 (3rd Cir. 1988). Both decisions prohibited the assumption of an executory contract by a debtor in possession when applicable law and the contracts in question absolutely prohibited assignment.[8] Although both debtors argued that they should be allowed to assume their respective contracts, these courts held that since the debtors could not assign the contracts to a hypothetical assignee, the debtors could not assume them either.[9]

Oddly, TGSN's Motion to Stay Pending Appeal makes no mention of *Mirant*, the controlling authority in this circuit. In *Mirant*, the Fifth Circuit adopted the "actual or as applied" test, which requires a showing that the non-debtor party's contract will *actually* be assigned, that the nondebtor party will in fact be asked to accept performance from a party other than the debtor or debtor in possession, and that the nondebtor party has reason, under the circumstances of the case, to refuse to accept substituted performance. The actual test provides that if no assignment has taken place or will take place, the exception for non-assignable contracts does not apply.

---

[8] The *Catapult* contract involved licenses over United States patents which are nonassignable as a matter of law. Further, nothing in the contract in question gave Catapult the right to assign its interests. In the case of *West*, the contract was a federal defense agreement described under federal law as a "personal services agreement." Again, federal law absolutely prohibited assignment of the contract to anyone and performance was limited to *West* under the contract's terms.

[9] For a slightly different interpretation, *In re James Cable Partners, L.P.*, 27 F.3d 534 (11th Cir. 1994) provides support for the proposition that unless a state statute excuses the non-debtor party from accepting performance from a third party, it is both assumable and assignable. In *James Cable*, a city ordinance prohibited assignment of all city contracts however, no state law excused the City from accepting performance by another, *i.e.* as with a personal services contract. As a result, the debtor was allowed to assume the contract. For another puzzling result, the case of *In re Sunterra Corporation*, 361 F.3d 257 (4th Cir. 2004) comes to yet another conclusion. In *Sunterra*, a computer software licensing agreement authorized the debtor licensee to assign its interest to a successor in interest. This provision was an exception to the general provisions against assignment contained in the contract. The court noted that under federal copyright law the rights were unassignable therefore despite contractual provisions to the contrary, the debtor was prohibited from assuming its own contract.

7

TGSN would have this Court ignore the holding of *Mirant* and instead predict that a license agreement *which permits* the Data's use by a Related Entity somehow prohibits assumption by the Trustee because he may, hypothetically or potentially in the future, seek permission to assign the contract to a third party to whom TGSN might object.[10]

For the record, TGSN has also failed to identify any statute, state or federal, which prohibits assignment of this agreement. The copy of the License Agreement offered into the record is not complete, further, the parties failed to disclose any factors which commonly determine the applicable state law governing the contract. The Court notes that the License Agreement was executed by companies located in Texas and Louisiana and involves seismic data over Louisiana real property. From these specific facts the Court cannot determine which state's law might control. However, both Louisiana and Texas law provide that contracts are generally assignable unless limited by the terms of the contract or if the subject of the agreement requires the personal performance of a party.[11] Thus, in the abstract, neither State's laws prohibit assignment. Although TGSN has argued that the Data is subject to a federal copyright, it failed to provide proof of registration or identify how the Data constitutes a creative, original work.[12] This Court acknowledges that federal jurisprudence has recognized a "federal policy" which generally prohibits the

---

[10] Even in this instance it is debatable if applicable law will prohibit assignment. On assignment the Fifth Circuit has opined that the circumstances of the assignment are to be reviewed in light of applicable law. In this case, the License Agreement provides for the transfer to Related Entities and even unrelated parties on the payment of a partial fee. Thus, "applicable law" would not excuse TGSN from accepting performance by third parties because its own agreement sets forth the parameters for a lawful assignment. In this context, the Fifth Circuit would read any alleged statutory prohibitions against assignment through the modifications agreed to by the parties in the contract and the circumstances surrounding the proposed assignment.

[11] *See,* La. C.C. art. 2642, 2653; and section 2.210(b) of the Texas Business and Commerce Code.

[12] Enforcement of copyright infringement is dependent on federal registration of the work. 17 U.S.C. 411(a).

assignment of non-exclusive copyright licenses without the owner's permission. However, that policy does not prohibit the parties from granting a right to assign to the non-exclusive licensee. As previously set forth, the License Agreement provides that Related and Unrelated Entities may have access to Data and Offshore is also entitled to transfer the Data under certain terms or conditions. Thus, even if the Court were to consider the possibility of assignment, under applicable law, the terms of that assignment would have to be known in order to give the License Agreement effect.

In accord with *Mirant*, is the First Circuit's decision, *Summit Inv. & Development Corp v Laroux*, 69 F.3d 608 (1st. Cir. 1995). The First Circuit explained "[Section 365] prevents a party to a contract from terminating the contract merely because the debtor has commenced a bankruptcy case, and Section 365(c) should not be interpreted to provide a means around that provision or its underlying policy.[13]

Although there is a divergence of opinion in the interpretation of section 365, there is no indication that the Fifth Circuit has moved from its position. This Court is bound to apply the "actual or as applied" test espoused by the Circuit, but also agrees with its rationale. It would be a strange result indeed should the Circuit reverse course and prohibit a debtor from assuming its own contract when neither statutory law nor the terms of the contract excuse TGSN from accepting performance from the debtor. The denial of assumption of a contract that specifically contemplates assumption or assignment to Related Entities, a trustee, or successor under a corporate

---

[13] *See also, 3 Collier On Bankruptcy* ¶365.07- 365.07[1][c] (Alan N. Resnick & Henry J. Sommer, eds., 16th ed.) ("the nonassumption rule of section 365(c) was intended to relieve the nondebtor party to a contract from having to deal with a party other than the debtor in situations...in which...the nondebtor party contracted for the personal attention of the debtor or for a relationship with the debtor, not a third party transferee.") *Colliers* at ¶365.071[1][d][ii].

reorganization would be stranger still. Nothing in section 365 indicates that Congress intended to write out contracts provisions which allow for assumption or assignment.

2. Irreparable Harm

Since January 16, 2003, Offshore has held a non-exclusive license to use the Data. Offshore paid $183,488.00 for this right. TGSN has not alleged that any portion of the license fee is outstanding or that the contract was breached.

TGSN argues that it will suffer irreparable harm if a stay pending appeal is denied. It argues that because the Trustee is free to use the Data for the benefit of the estate, TGSN will not be able to prevent the Trustee from using and sharing the "highly confidential information."

The Trustee acknowledges that he intends to use the Data for development and exploration of debtor's mineral property. Trustee, who stands in the shoes of the debtor, is well within his rights under the License Agreement to do so. The License Agreement mandates that the Licensee "keep strictly confidential, the [Data]" and "not to Show, allow the Use of or Deliver (as such terms are defined, respectively, in Sections 6.5, 6.6 and 6.7 below) the [Data] to any other person."[14] By assuming the License Agreement, Trustee binds the estate to its terms. If Trustee breaches the agreement, the License Agreement provides the terms of relief available to TGNS including monetary damages. Where monetary damages are available, irreparable harm does not exist. *City of Meridian, Miss. v. Algernon Blair, Inc.*, 721 F.2d 525 (5th Cir. 1983); *Rooster Petroleum, LLC v. Fairways Offshore Exploration, Inc.,* 2001 WL 4885396 (E.D. La. 10/12/12).

---

[14] Section 4.2 of the License Agreement provides, "Except as expressly permitted by this Agreement, Licensee agrees (a) to keep strictly confidential, and to take appropriate steps to insure that its employees and agents keep strictly confidential, the Seismic Material and (b) not to Show, allow the Use of or Deliver (as such terms are defined, respectively, in Sections 6.5, 6.6 and 6.7 below) the Seismic Material to any other person."

3.   Substantial Harm to Other Parties

TGSN argues that granting the stay will not adversely affect or cause substantial harm to Trustee or any other party in interest. The converse is actually true.

The Trustee requires access to the Data in the daily course of business operations. The estate is in the business of exploring for and developing oil and gas properties. Only through these activities will creditors be paid and the costs of administration be funded. Trustee is in the process of evaluating the estate's mineral interests both as they presently exist and may develop. Access to the Data is both critical and necessary to this effort. Without the Data, Trustee cannot analyze the value of interests in the applicable mineral blocks, propose future development, or effectively consider offers from third parties for purchase of its oil and gas assets. Any delay in turning over what is rightfully property of the debtor's estate will substantially harm Trustee's ability to reorganize. As a result, a stay of this ruling will work substantial harm on the estate.

4.   Relief Requested is Contrary to Public Interest

TGSN argues that the Data is copyrighted material and that the public interest is not served by thwarting a copyright holder's rights in a copyrighted work. At the hearing on this matter, TGSN failed to prove that it has a valid copyright in the Data. A brief review of the scope of federal copyright law did not provide ready support for TGSN's alleged copyright.

17 U.S.C.§101 *et. seq*. defines the scope of federal copyright law. Section 102 itemizes copyright protection for original literary, musical, dramatic, pantomime, choreographic, pictorial, graphic, sculptural, audiovisual, and architectural works, as well as motion pictures and sound recordings. It also includes creative works "fixed in any tangible means of expression." TGSN asserts that portions of its Data include original, creative works but TGSN failed to identify the

11

specifics of it original work product. While it is conceivable that portions of the Data could qualify as a creative work, to so find would be mere speculation on the part of the Court.

Further, even if the Data were subject to copyright protection, TGSN cannot legally enforce the copyright without proof of registration with the Copyright Office.[15] It also bears repeating that the terms of this License Agreement require maintenance of confidentiality provisions which ultimately protect TGSN from unauthorized dissemination of its Data.

Because the stay would work significant damage on the estate, TGSN has not proven a right to copyright protection and enforcement, and the terms of the agreement provide both safeguards for its alleged interests and remedies on breach, this Court does not find it in the public interest to provide a stay pending appeal.

For the reasons set forth above, the Motion to Stay Pending Appeal ("Motion") filed by TGSN is DENIED. An Order will be entered in accord with these Reasons.

New Orleans, La., December 6, 2012.



Judge Elizabeth W. Magner

---

[15] 17 U.S.C. §411(a).